DANA H. FITCH & others *vs.* SAMUEL P. HARRINGTON & others.

An agreement between one partner and a third person that the latter shall participate in that partner's share of the profits of the firm, as profits, renders him liable as a partner to the creditors of the firm, although, as regards the other members of the firm, he is not their copartner.

The acts and declarations of a person not a partner are not admissible to charge him as a partner, without showing that they were brought home to the plaintiff's knowledge.

ACTION on a promissory note signed by the name of Whittemore, Harrington & Co. Trial before *Metcalf*, J., who signed this bill of exceptions :

" Samuel P. Harrington alone made defence ; and the only question was, whether he was liable, as a partner, with the other defendants.

" It was in evidence that the firm of Whittemore, Harrington & Co. was formed in July 1856, and carried on business until the latter part of October 1857, when they stopped payment ; and that the notes in suit were given for articles used in the business of the firm.

" The plaintiffs introduced evidence tending to show that Samuel P. Harrington was a member of said firm, as between the partners themselves ; that the share in the concern, standing in the name of Leonard Harrington (one of the members of the firm) was owned jointly by Leonard and Samuel P. Harrington ; that Samuel P. held himself out to the plaintiffs, expressly, and also to the public at large, as one of the partners in the firm :

and that the plaintiffs gave credit to Whittemore, Harrington & Co. under the belief that he was a partner.

" The defendant Samuel P. Harrington introduced evidence tending to show that he was not a partner in the firm ; that he had not held himself out as such to the public at large, nor to the plaintiffs ; that he had no interest in the share of the concern standing in the name of Leonard Harrington ; and that he was not known nor recognized as a partner by the members of the firm.

" The plaintiffs requested the court to instruct the jury, that although Samuel P. Harrington was not known, by the members of the firm generally, to be a partner, yet if the share in the partnership concern, which share stood in the name of Leonard Harrington only, was owned jointly by Leonard and Samuel P., and Samuel P., as between him and Leonard, was entitled to the profits, if any, which might be derived from that share, he (Samuel P.) was a partner in the firm, as to the plaintiffs, and liable to them in this action ; that if he held himself out as a partner in the firm, under such circumstances as to induce the plaintiffs to give credit to the firm under that belief, though he was not in reality a partner, he was still liable to them as such ; and that his acts and declarations, if made publicly, though not brought to the knowledge of the plaintiffs, were competent evidence that he so held himself out, and thereby induced the plaintiffs to give credit to the firm, under the belief that he was a partner.

" The court declined to give instructions in the terms requested ; but instructed the jury as follows : That if Samuel P. Harrington was a member of the firm, when the notes in suit were given, he was liable in this action, whether the plaintiffs then knew or did not know that he was a partner, or whether they did or did not give credit to the firm on the belief that he was a partner ; that if he was not a member of the firm, yet, if by his acts and declarations, which were brought home to the knowledge of the plaintiffs, he led them to believe that he was a member of the firm, and to give credit to the firm in that belief, he was liable to them in this action ; that his acts and declara-

tions to persons other than the plaintiffs were evidence for the jury to consider, in determining the question whether he was a member of the firm; but if such acts and declarations did not satisfy the jury that he was a member of the firm, then they were not evidence which would render him liable to the plaintiffs, unless knowledge of them was brought home to the plaintiffs, and induced them to give credit to the firm in the belief that he was a member of the firm; that if the share in the partnership concern, which share stood in the name of Leonard Harrington only, was owned jointly by him and Samuel P. Harrington, then Samuel P. was liable in this action; but if there was a subpartnership between Leonard and Samuel P., by which Samuel P. was to share in the profits of the firm, to which profits Leonard was entitled, this alone would not make Samuel P. liable for the debts of the firm.

"The jury returned a verdict for the defendant, and the plaintiffs excepted to the instructions given to the jury."

*T. L. Nelson,* for the plaintiffs. If Samuel P. Harrington conducted himself in a manner to justify the community in the belief that he was a member of the firm of Whittemore, Harrington & Co., he should be held responsible to parties dealing with them under that belief, though derived, not from express personal knowledge of the particular conduct, but from the general knowledge and understanding of the community. Under the older decisions, it was sufficient to show admissions and acts, without bringing them home to the knowledge of the creditor. But the more recent cases go no further than to hold, that in order to incur the responsibilities of a real partner, the defendant must be shown to have held himself out as such to the creditor himself, or under circumstances to satisfy the jury that the creditor knew of it, and believed him to be a partner. Here the evidence tended to show that the defendant held himself out to the public at large as one of the firm, and that the plaintiffs dealt with them under that belief; and the question, whether the conduct of the defendant justified this belief, should have been left to the jury, to be considered by them under all the circumstances of the case. The rule contended for is founded upon

principles of general policy, to prevent the extension of unsound credit, and to prevent persons who may deal with the firm from being defrauded or deceived. Collyer on Part. § 86. Story on Part. §§, 64, 65. *Young* v. *Axtell,* cited in 2 H. Bl. 242. *Waugh* v. *Carver,* 2 H. Bl. 235, and notes thereto in 1 Smith's Lead. Cas. 507, 508. *Dickinson* v. *Valpy,* 10 B. & C. 128. *Shott* v. *Strealfield,* 1 M. & Rob. 9. *Fox* v. *Clifton,* 6 Bing. 776. *Doubleday* v. *Muskett,* 7 Bing. 117. *Hicks* v. *Cram,* 17 Verm. 449. *Benedict* v. *Davis,* 2 McLean, 347. *Smith* v. *Smith,* 7 Foster, 205–209. Chit. Bills, (10th Amer. ed.) 39.

The instructions on the third point are erroneous in law. If by an arrangement with Leonard Harrington, Samuel P. Harrington was to share in the profits of the business, and had an interest in the profits, as profits, he is a partner as to creditors. *Blanchard* v. *Coolidge,* 22 Pick. 151. *Denny* v. *Cabot,* 6 Met. 90. *Bond* v. *Pittard,* 3 M. & W. 357. 3 Kent Com. (6th ed.) 52. Collyer on Part. §§ 10, 194. *Goddard* v. *Hodges,* 1 Cr. & M. 33. *Coope* v. *Eyre,* 1 H. Bl. 37. *Saville* v. *Robertson,* 4 T. R. 725. *Glassington* v. *Thwait,* 1 Sim. & Stu. 124. 1 Dan. Ch. Pr. 240–250. Story Eq. Pl. § 72. Story on Part. § 34. *Brown* v. *De Tastet,* Jac. 284, and *Raymond's case,* cited in 2 Rose, 255, on which Collyer on Part. § 194, relies, only show that a subpartner is not a member of the general partnership as regards the other partners.

*F. H. Dewey,* for the defendant. The instructions given to the jury were correct. Samuel P. Harrington's acts and declarations were not admissible in evidence to charge him in this action, unless knowledge of them were brought home to the plaintiffs.

A subpartnership may be defined to be an agreement whereby a member of the firm shares his proportion of the profits, after he has received them, with another person, not a member. This would not make Samuel P. Harrington liable as a member of the firm. A partner may enter into a subpartnership with a stranger; the stranger may share the profits of the particular partner with whom he contracts, and not be liable for the debts of the general partnership. Collyer on Part. § 194. *Brown*

v. *De Tastet,* Jac. 284. Samuel P. Harrington was not liable because he shared with L. Harrington his part of the profits. Story on Part. § 43. *Turner* v. *Bissell,* 14 Pick. 192. *Cutler* v. *Winsor,* 6 Pick. 335. It is well settled, in whaling voyages, that when the master and crew receive their pay out of the proceeds of the oil, they are not to be regarded as partners with the owners. Agreements that the manufacturer of cloth should receive a certain portion of net profits does not make him a partner. *Denny* v. *Cabot,* 6 Met. 82. There must be a sharing of losses, as well as of profits, to constitute a partnership. *Vanderburgh* v. *Hull,* 20 Wend. 70. *Burckle* v. *Echart,* 1 Denio, 337. When a person is not, as between the members of the firm, a partner, he shall not be considered such as to third persons, if the transaction admits of a different interpretation. Story on Part. §§ 30, 33, 37 & notes. Collyer on Part. § 19. *Loomis* v. *Marshall,* 12 Conn. 69. *Turner* v. *Bissell,* 14 Pick. 192.

METCALF, J. We are all of opinion that the plaintiffs are entitled to a new trial, for the reason that the instruction respecting a subpartnership between Leonard Harrington and Samuel P. Harrington, given, as it was, without any explanation, may have misled the jury. That part of the instructions was given on the authority of Collyer on Partnership, (3d ed.) § 194, which was cited by the defendants' counsel at so late a stage of the trial, that the court had no opportunity to examine the position there laid down, which is thus : " Although the *delectus personæ,* which is inherent in the nature of partnership, precludes the introduction of a stranger against the will of any of the copartners, yet no partner is precluded from entering into a subpartnership with a stranger ; *nam socii mei socius, meus socius non est.* In such case, the stranger may share the profits of the particular partner with whom he contracts, and, not being engaged in the general partnership, will of course not be liable for their debts."

The only decided cases which Mr. Collyer cites, in support of this position, are that of *Sir Charles Raymond,* referred to by Lord Eldon, in *Ex parte Barrow,* 2 Rose, 255, and that of *Brown* v. *De Tastet,* Jac. 284. In the case in 2 Rose, Lord

Eldon said: "I take it to have been long since clearly established, that a man may become a partner with A., where A. and B. are partners, and yet not be a member of that partnership which existed between A. and B. In the case of Sir Charles Raymond, a banker in the city, a Mr. Fletcher agreed with Sir Charles Raymond, that he should be interested so far as to receive a share of his profits of the business, and which share he had a right to draw out from the firm of Raymond & Co. But it was held, that he was no partner in that partnership, had no demand against it, had no account in it, and that he must be satisfied with a share of the profits arising and given to Sir Charles Raymond." In the case in Jacob, it was decided that where one of several partners had agreed with a third person to give him a moiety of his share in the concern, the court of chancery might decree an account between them, without making the other partners parties to the bill. These cases show this only: That as between the members of the firm, *inter sese*, Mr. Fletcher, in the first case, and the third person in the other case, were not copartners. They decided nothing as to the liability of either of them to the creditors of the existing firm.

But Mr. Collyer also cites 2 Bell Com. 636, where it is said: "There may be a subcontract, by which a stranger may be admitted to divide with any of the partners his share of the profits. The other partners are not bound to take notice of this subcontract; nor is there any responsibility attached to it, by which the stranger, as sharing in the profit of the concern, becomes liable for the debts of the partnership." Erskine's Institutes, and the case of *Fairholm* v. *Majoribanks*, decided in Scotland in 1725, are cited in support of this position. In looking at 3 Ersk. Inst. (ed. of 1828,) §§ 21, 22, we find that nothing is there said concerning the liability of such stranger for the debts of the partnership. Mr. Erskine says, "if any of the partners shall assume a third person into partnership with him, such assumed person becomes partner, not to the company, but to the assumer." We have not seen the report of *Fairholm* v. *Majoribanks*. But Mr. Stark cites that case and Erskine's Institutes, in support of the following passage in his work on partnership

40*

" Subcontracts between partners and other persons, by which a beneficial interest in the partnership is granted, do not create new partners. The partner himself remains alone liable to company creditors." He adds a quotation from the Digest, which is silent, however, as to such other persons' liability for the debts of the partnership. Stark on Part. 155. It would seem, therefore, that the Scotch writers, Mr. Bell and Mr. Stark, have stated the doctrine which Mr. Collyer has repeated, only as an inference of their own from the established law, that such a subcontract as those writers mention, between one member of a firm and a stranger, does not make the stranger, as between him and the firm, their copartner; and hence that the law of Scotland, as to such stranger's liability for the debts of the firm, may not differ from the law of England and of this country. Indeed, it is hardly to be supposed that it was decided in *Fairholm* v. *Majoribanks*, that such a stranger was not liable for the debts of the firm in a case in which, by the English law and ours, he would have been liable. For both Mr. Bell and Mr. Stark, as well as Mr. Collyer, correctly state the English law on this point, without an intimation that the Scotch law is different, except by subsequently inserting the passage which the defendants' counsel cited at the trial of the present case. 2 Bell Com. 625, 626 Stark on Part. 137 *& seq.* Collyer on Part. book I. *c.* 1.

Now what is our law and the law of England on this subject ? We understand it to be thus: An agreement between one copartner and a third person, that he shall participate in the profits of the firm, as profits, renders him liable, as a partner, to the creditors of the firm, although, as between himself and the members of the firm, he is not their copartner; but if such third person, by his agreement with one member of the firm, is to receive compensation for his labor, services, &c. in proportion to the profits of the business of the firm, without having any specific lien on the profits, to the exclusion of other creditors, he is not liable for the debts of the firm. *Denny* v. *Cabot*, 6 Met. 90–94. *Bradley* v. *White*, 10 Met. 305. *Holmes* v. *Old Colony Railroad*, 5 Gray, 58. *Burckle* v. *Echart*, 3 Comst. 132. 3 Kent Com. (6th ed.) 33 *& seq.* Parsons Merc. Law, 168, & note.

In order to enable the jury to decide whether Samuel P. Harrington was liable for the debts of the firm of Whittemore, Harrington & Co. by reason of a subpartnership between him and Leonard Harrington, they should have received instructions more definite and discriminating than they could derive from the mere words of Mr. Collyer. The kind of agreement which would render Samuel P. liable for the debts of the firm, and the kind of agreement which would not render him liable therefor, should have been so explained to them that they might intelligently decide whether the agreement between the two (if any was proved) was such as did or did not render Samuel P. liable as a partner, for the debts due from the firm to the plaintiffs.

The other instructions given to the jury seem to us to have been unexceptionable. *New trial granted.*